# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 30, 2023          Decided August 9, 2024

No. 21-5243

GIORGI RTSKHILADZE,
APPELLANT

v.

ROBERT S. MUELLER, III, SPECIAL COUNSEL FOR THE
INVESTIGATION INTO RUSSIAN INTERFERENCE IN THE 2016
PRESIDENTIAL ELECTION AND UNITED STATES DEPARTMENT
OF JUSTICE,
APPELLEES

---

Consolidated with 22-3037

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:20-cv-01591)
(No. 1:21-gj-00048)

---

*Jerome A. Madden* argued the cause and filed the briefs for appellant.

*Sean R. Janda*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were

2

*Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney.

Before: SRINIVASAN, *Chief Judge*, WALKER and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: In 2017, Special Counsel Robert S. Mueller III began investigating allegations of Russian government interference in the previous year's presidential election. To that end he empaneled a grand jury. One of the witnesses who testified before it was Giorgi Rtskhiladze.[1]

When the Department of Justice released a redacted version of Mueller's final report, it included information that allegedly injured Rtskhiladze. So he sued, seeking both equitable and monetary relief. He also filed a separate application to obtain a copy of the transcript of his grand jury testimony.

The district court decided that Rtskhiladze lacked standing to bring his equitable claims; that he failed to state a claim for damages; and that he was not entitled to obtain a copy of the transcript.[2]

We hold that Rtskhiladze has standing to bring all his claims. So we remand for the district court to consider the

---

[1] Rtskhiladze is pronounced "Ske-LAHD-zuh" in the audio version of his memoir. https://www.youtube.com/watch?v=XJd9eWU8qgk.

[2] Rtskhiladze brought a separate damages claim against DOJ and Special Counsel Mueller personally. But the district court held that Rtskhiladze abandoned this claim before appeal, and in any event, he forfeited all arguments about this claim in his appellate brief.

3

merits of the equitable claims that it dismissed for lack of standing. However, we agree with the district court that Rtskhiladze has failed to state a claim for damages. We also agree with the decision to deny Rtskhiladze's request to obtain a copy of the transcript of his grand jury testimony.

### I. Background

Giorgi Rtskhiladze was born in the Republic of Georgia, which was then part of the Soviet Union. In the 1990s, he moved to the United States and later became an American citizen.

In 2016, rumors surfaced of "tapes" in Russia that might create difficulties for Donald Trump's presidential campaign. JA 51. That year, Rtskhiladze sent a text message to Michael Cohen, an attorney for candidate Trump. The text said Rtskhiladze had: "Stopped flow of some tapes from Russia." JA 50 ¶ 31.

After President Trump's election, DOJ appointed Special Counsel Robert S. Mueller III to investigate allegations that Russia had interfered in the election. Mueller empaneled a grand jury and called Rtskhiladze as a witness. He then wrote a report to DOJ about his findings. DOJ released a version of the report to the public, which redacted (among other things) references to grand jury materials.

The public report discusses Rtskhiladze in several places, including footnote 112. *See* Special Counsel Robert S. Mueller, III, Report on the Investigation into Russian Interference in the 2016 Presidential Election, Volume II at 27 n.112 (March 2019), https://perma.cc/LBG3-8CHQ ("Mueller Report"). That footnote contained several inaccuracies.

4

First, it falsely called Rtskhiladze "Russian" when he is a Georgian-American. *Id.* Second, it inaccurately quoted the text that Rtskhiladze sent to Michael Cohen.[3] Third, Rtskhiladze says the footnote was vaguely drafted and created false insinuations about his conduct.[4]

---

[3] *Compare* Mueller Report, Volume II at 27 n.112, *with* JA 50 ¶ 31 (emphases added to illustrate discrepancy).

| Inaccurate: "Stopped flow of tapes from Russia but not sure if there's anything else. Just so you know . . . ." | Accurate: "Stopped flow of <u>some</u> tapes from Russia but not sure if there's anything else. Just so <u>u</u> know <u>. . .</u>" |
|---|---|

[4] The footnote reads:

> Comey 1/7/17 Memorandum, at 1-2; Comey 11/15/17 302, at 3. Comey's briefing included the Steele reporting's unverified allegation that the Russians had compromising tapes of the President involving conduct when he was a private citizen during a 2013 trip to Moscow for the Miss Universe Pageant. During the 2016 presidential campaign, a similar claim may have reached candidate Trump. On October 30, 2016, Michael Cohen received a text from Russian businessman Giorgi Rtskhiladze that said, "Stopped flow of tapes from Russia but not sure if there's anything else. Just so you know . . . ." 10/30/16 Text Message, Rtskhiladze to Cohen. Rtskhiladze said "tapes" referred to compromising tapes of Trump rumored to be held by persons associated with the Russian real estate conglomerate Crocus Group, which had helped host the 2013 Miss Universe Pageant in Russia. Rtskhiladze 4/4/18 302, at 12. Cohen said he spoke to Trump about the issue after receiving the texts from Rtskhiladze. Cohen 9/12/18 302, at 13. Rtskhiladze said he was told the tapes were fake, but he did not communicate that to Cohen. Rtskhiladze 5/10/18 302, at 7.

Mueller Report, Volume II at 27 n.112.

5

According to Rtskhiladze, the Mueller Report's deficiencies harmed his reputation and cost him several business deals — not the least because footnote 112 garnered widespread media attention.  He also alleges the deficiencies altered the Georgian government's plans to name Rtskhiladze an "Honorary Consul," which fell through after the report's release.  JA 85.

Rtskhiladze later sued Mueller and DOJ.  Invoking the Administrative Procedure Act, the Declaratory Judgment Act, and the Privacy Act, Rtskhiladze sought equitable relief: specifically, a declaration that footnote 112 was inaccurate and an order requiring DOJ to amend it.  He also sought damages under the Privacy Act.

While the suit was pending, the United States Senate issued its own report about whether Russia interfered in the 2016 presidential election.  The Senate Report included new details about Rtskhiladze, correctly identified him as a Georgian-American, and properly quoted the relevant text message.  *See* Senate Select Committee on Intelligence, 116th Cong., Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, Volume V at 658-660 (November 2020), https://perma.cc/M4FL-75QV.

Reasoning that the Senate Report "is an independent and unchallenged source of" the Mueller Report's "facts and implications," the district court dismissed Rtskhiladze's equitable claims for lack of standing.  JA 108.  For the same reason, the district court held that Rtskhiladze lacked standing to seek damages for harms inflicted after the Senate Report's publication.  As for damages before that point, the district court held that Rtskhiladze had failed to state a claim.

Rtskhiladze appealed those decisions.

6

To prepare for his appeal, Rtskhiladze started a second action. He asked the district court for permission to review a transcript of his grand jury testimony, take notes about it, and prepare a declaration summarizing it for the court in his first action. The district court granted each of those requests, which are not in dispute.

Rtskhiladze also sought to obtain a copy of the transcript of his grand jury testimony. His plan was to share that copy with the public. *See* Oral Arg. Tr. at 6, 9-10. The district court denied his request.

Rtskhiladze appealed that decision as well.

## II. Analysis

We consider three issues: (1) Rtskhiladze's equitable claims; (2) his damages claim; and (3) his alleged right to obtain a copy of the transcript of his grand jury testimony.

### A. Equitable Claims

Rtskhiladze has standing to bring his equitable claims. *See* U.S. Const. art. III.[5]

To establish standing, a plaintiff must demonstrate he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[5] Our review is de novo. *Center for Law & Education v. Department of Education*, 396 F.3d 1152, 1156 (D.C. Cir. 2005).

7

DOJ does little to dispute that Rtskhiladze has alleged an injury caused by the Mueller Report. More saliently, DOJ says that the court cannot equitably redress any such injury. According to DOJ, the (accurate) Senate Report eliminated the ongoing effects of the (inaccurate) Mueller Report.

We disagree. A government report (like the Senate Report) does not extinguish the harm from an earlier government report (like the Mueller Report) "where reputational injury derives directly from an unexpired and unretracted government action." *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003). "Case law is clear" in other contexts that such an "injury satisfies the requirements of Article III standing to challenge that action" — and the same is true here in the Privacy Act context. *Id.*; *cf.* 5 U.S.C. § 552a(d)(2)(B)(i), (g)(2)(A).

The Mueller Report remains "unexpired and unretracted." *Foretich*, 351 F.3d at 1213. That's because the Senate cannot retract a report issued by DOJ, nor did the Senate Report purport to do so. So the Mueller Report could continue to harm Rtskhiladze in at least two ways. First, someone may find the Mueller Report but not the Senate Report — in which case the Mueller Report would still cause Rtskhiladze's alleged injury. Alternatively, readers of both reports may continue to believe Mueller. After all, Congress neither speaks for DOJ, nor speaks infallibly. Either way, a court could redress the ongoing injury by ordering DOJ to correct the Mueller Report.

Such readers are not hypothetical here: Rtskhiladze presented evidence that one of his reputational harms could be solved by a "retraction" issued "from the Attorney General." *See* JA 120 n.2 (cleaned up). In other words, the alleged and ongoing injury is traceable to DOJ's Mueller Report, and it could still be redressed by an order to correct it.

8

DOJ argues that Rtskhiladze has no right to a full retraction of the Mueller Report's references to him because some are accurate, and it's the accurate information that's harming Rtskhiladze's reputation. Perhaps. But in a defamation suit, truth is a *defense* — not an impediment to standing. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). And though this is not a defamation suit, the same logic applies. The (partial) truth of the Mueller Report is a defense for DOJ — not a barrier to stop Rtskhiladze from bringing his equitable claims.

We therefore reverse the district court's decision to dismiss Rtskhiladze's equitable claims for lack of standing and remand to the district court to address DOJ's motion to dismiss them for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).[6]

### B. Damages Claim

Like the district court, we hold that Rtskhiladze has standing to seek damages for injuries that DOJ allegedly inflicted *before* the Senate Report's release. Unlike the district court, we hold that Rtskhiladze also has standing to seek damages for injuries inflicted *after* that point.

As we explained above, the Mueller Report could still harm Rtskhiladze regardless of what is in the Senate Report. So for the same reasons Rtskhiladze has standing to seek

---

[6] The district court did not consider the merits of Rtskhiladze's equitable claims (unlike his damages claim). Though DOJ briefed merits arguments about why the equitable claims fail, we see no reason to deviate from our "general practice" of remanding for the district court to address those arguments in the first instance. *See Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016).

9

equitable relief to redress ongoing injuries, he has standing to seek monetary relief for those injuries.[7]

That said, Rtskhiladze has failed to plausibly state a claim for monetary relief.  *See* Fed. R. Civ. P. 12(b)(6).[8]

Recall that he sued for damages under the Privacy Act.  That Act requires plaintiffs seeking damages to show (among other things) that a federal agency's conduct was "intentional or willful."  5 U.S.C. § 552a(g)(4).  The conduct "must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (cleaned up).

On appeal, Rtskhiladze has forfeited any argument that he plausibly alleged "intentional or willful" conduct by DOJ.  Instead, he cites common-law defamation precedents.  But this is not a defamation suit, and the Privacy Act's explicit text requires Rtskhiladze to allege "intentional or willful" conduct.  5 U.S.C. § 552a(g)(4).  So here, common law cases are not on point.

---

[7] On appeal, DOJ tries to rebut the district court's analysis by offering an alternative source of Rtskhiladze's alleged injury — an August 2017 *New Yorker* article discussing Rtskhiladze's connection to President Trump.  But that argument is belied by the facts.  The Georgian government began the process of appointing Rtskhiladze as an "Honorary Consul" in the "summer and fall of 2017," and terminated his candidacy once the Mueller Report was released almost two years later.  JA 45, 85.  The district court was right to conclude that, given this timeline, Rtskhiladze plausibly alleged that the Mueller Report (and not the article) harmed him.

[8] Our review is de novo.  *See Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017).

10

Because Rtskhiladze has not even attempted to meet the Privacy Act's requirements, we affirm the district court's dismissal of his damages claim.

### C. Obtaining the Grand Jury Transcript

The district court did not err by denying Rtskhiladze's request to obtain a copy of the transcript of his grand jury testimony. By "obtain," we mean gaining control of a transcript copy rather than accessing one already in the government's control. *See* Fed. R. Crim. P. 6(e)(1). And by "copy," we mean a transcript not prepared by a witness (or his attorneys) taking notes while he accesses the transcript of his testimony.

### 1. Burden of Proof

Before assessing the district court's decision, we must resolve a threshold dispute. DOJ says Rtskhiladze bears the burden of demonstrating a need to obtain a copy of the transcript of his grand jury testimony. But Rtskhiladze says the burden is on DOJ to establish why his request should be denied.

Rtskhiladze's argument relies on two of our cases. But neither provides the support he needs.

The first is *In re Sealed Motion*, 880 F.2d 1367 (D.C. Cir. 1989). There, we held that "a grand jury 'witness' in an independent counsel proceeding" was "entitled to a copy of his testimony" when "no indictment was returned and the Final Report ha[d] been filed." *Id.* at 1368. But that case was unique because the Independent Counsel Act was "*sui generis*." *Id.* at 1369.

11

Students of the 1980s and '90s may remember that the Act provided for an independent counsel with special powers insulating him from executive-branch control, including removal protections. *See* 28 U.S.C. § 596(a). "Because of an independent counsel's special powers, Congress provided *special procedures* . . . to ensure fairness to the targets of such investigations and to those touched by investigations." *In re Sealed Motion*, 880 F.2d at 1369-70 (emphasis added). And those procedures implied an exception to "the general rule of grand jury secrecy." *Id.* at 1370.

Because the Independent Counsel Act expired long ago, *In re Sealed Motion* does not control here. Though Mueller was a special counsel, he was not an independent counsel. He lacked some of the "special powers" enjoyed by the independent counsels of the '80s and '90s — including statutory protections against at-will removal. *Id.* at 1369; *see also* 28 U.S.C. § 596(a)(1).

Outside of the independent counsel process, proceedings are governed by "the general rule of grand jury secrecy" in Federal Rule of Criminal Procedure 6(e). *See In re Sealed Motion*, 880 F.2d at 1370; Fed. R. Crim. P. 6(e)(2)(B) ("Unless these rules provide otherwise," grand jurors, government attorneys, and other specified personnel "must not disclose a matter occurring before the grand jury . . . ."). Thus Rule 6(e) — and not the special procedure outlined in the Independent Counsel Act — governs here.

Rtskhiladze relies on a second case: *In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007). It held that grand jury "secrecy rules" — the provisions of Federal Rule of Criminal Procedure 6(e) — "are no justification for denying witnesses *access to their own transcripts*." *Id.* at 989 (emphasis added in part).

12

But on appeal, Rtskhiladze does not seek "access" to his transcript — he already got that. And *In re Grand Jury* limited its holding to "access" — not to obtaining a copy of the transcript, which Rtskhiladze could keep as a record and release to the public. *See* 490 F.3d at 987 (noting commentators' failure to "distinguish[ ] between having access and obtaining a copy"); *see also* Oral Arg. Tr. at 6, 9-10. In fact, *In re Grand Jury* expressly left open the question of what factors "would justify denying copies of transcripts." 490 F.3d at 989-90.

To answer that open question, we apply the same framework used in *In re Grand Jury*. We "weigh the competing interests of the Government and grand jury witnesses" given "the open-ended text of Rule 6(e)(3)(E)(i) and the general analytical approach of the cases." *Id.* at 987; *see also* Fed. R. Crim. P. 6(e)(3)(E) ("The court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding . . . .").[9]

First consider a witness's interest in obtaining a copy of his grand testimony. It is minimal — at least when, as here, he has already received access to the transcript and has been afforded a discretionary opportunity to take notes. *See In re Grand Jury*, 490 F.3d at 990 ("We leave to the sound discretion of the district court whether . . . to allow the witnesses or their

---

[9] Rtskhiladze notes that Federal Rule of Criminal Procedure 6(e) imposes secrecy requirements on the government, but not on witnesses who testify before the grand jury. *See In re Grand Jury*, 490 F.3d at 989. True enough. But that does not mean we can ignore Rule 6(e) in this case, or abandon the interest-balancing approach we have developed when applying the Rule. *See id.* at 980, 987-88.

13

attorneys to take notes."). Unless the district court says otherwise, such a witness could even write out his own version of the transcript in his notes. He could take this self-made transcript, walk outside, and "stand on the courthouse steps [to] tell the public everything the witness was asked and answered." *Id.* at 989. That kind of witness can, in other words, do just about everything that he might want to do by obtaining a copy.

Now consider the relevant interest of DOJ. That interest is primarily in limiting "the possibility of witness intimidation" to encourage honest testimony. *Id.* When it comes to a witness *obtaining* a transcript of grand jury testimony, that interest is significant. "[I]f a witness could routinely obtain a copy of the grand jury transcript," a third party could "pressure the witness to obtain the transcript and to give it to that third party." *Id.* And the "fear of being forced to disclose the transcript to a threatening third party could deter witnesses from testifying freely and candidly in the first place." *Id.*

DOJ's interest is far less significant when the issue is transcript *access* (what Rtskhiladze was granted) rather than *obtaining* a copy of the transcript (what Rtskhiladze was denied). Witnesses with access remain free to protect themselves by misleading any third parties who threaten them. Consider that someone like a court reporter preparing a transcript copy has every incentive to be complete and accurate. Conversely, if a witness transcribes the transcript in his notes, he could alter or omit details if needed to protect himself. So "denying witnesses access to their own transcripts to help prevent witnesses from talking to others makes little sense." *Id.*; *see also id.* at 990 ("Grand jury witnesses are not substantially more likely to face pressure to divulge information about their grand jury testimony if they can review their transcript in private than if they have to recall their testimony from memory.").

14

That difference — between DOJ's interest in blocking transcript access (*In re Grand Jury*) and its interest in blocking a witness from obtaining a copy of the transcript (this case) — explains why the interest balancing is not identical in the two cases.

To sum up, the district court should weigh the interests of the government against those of the witness when deciding whether a witness can obtain a copy of his grand jury transcript. So the district court was correct when it refused to create a rule automatically permitting witnesses to obtain a copy of their grand jury transcripts. The burden is on the witness to provide an interest of his own for the district court to consider. And when the district court weighs that interest against the government's, we will review its decision for an abuse of discretion. *See id.* at 990.

**2. Review of the District Court's Exercise of Discretion**

Applying abuse-of-discretion review, we have little trouble affirming the decision of the district court.

Rtskhiladze's interest in obtaining a copy of his transcript is minimal. He fails to convincingly explain what he would gain by obtaining a copy of a transcript he has already accessed and could have transcribed. While we do not rule out the possibility that some future witness might provide a convincing reason for obtaining a copy of the transcript of his grand jury testimony, Rtskhiladze has provided none here. In contrast,

15

DOJ has a significant interest in not chilling the testimony of future grand jury witnesses.[10]

We therefore hold that the district court did not abuse its discretion when it denied Rtskhiladze's request to obtain a copy of his grand jury transcript.

### III. Conclusion

The district court held that Rtskhiladze lacked standing to bring his equitable claims. We reverse that decision and remand those claims.

We agree with the district court that Rtskhiladze has standing to bring his damages claim for alleged injuries suffered *before* the Senate Report's release. But unlike the district court, we conclude that Rtskhiladze also has standing to sue for damages for alleged harms *after* the Senate Report's release.

Though Rtskhiladze has standing to sue for damages, he has failed to state a claim for which relief can be granted. So we affirm the district court's dismissal of that claim.

---

[10] Rtskhiladze says he should be allowed to publish a copy to counteract DOJ's alleged publication of other parts of his testimony that portray him a negative light. But he never identifies where DOJ made those disclosures. None of footnote 112 was redacted to block grand jury information — though much of the Mueller Report is redacted for that reason — and the footnote does not cite grand jury testimony at any point. And the footnote contains citations to other sources that Rtskhiladze does not challenge.

16

Finally, the district court concluded that Rtskhiladze is not entitled to obtain a copy of his grand jury transcript. That decision was not an abuse of discretion, so we affirm.

*So ordered*.